# SPECIALIZED TREATMENT AND ASSESSMENT RESOURCES, P.A.

317 RIVER EDGE BLVD., STE. 202, COCOA, FL  32922
Phone: (321) 338-7555

---

| | |
|---|---|
| ERIC A. IMHOF, PsyD | KIMBERLY G. SPENCE, PHD |
| PRESIDENT/MANAGING PARTNER | SENIOR EXECUTIVE PARTNER |
| DIRECTOR OF FORENSIC SERVICES | CLINICAL DIRECTOR OF AUTISM |
| FLORIDA LICENSED PSYCHOLOGIST | OUTREACH SERVICES |
| ALABAMA LICENSED CLINICAL PSYCHOLOGIST | FLORIDA CERTIFIED PROFESSIONAL EDUCATOR |
| VIRGINIA LICENSED CLINICAL PSYCHOLOGIST | |

August 19, 2022

Samuel J. Rabin, Jr., Esq.
Rabin & Lopez, P. A.
1 SE 3rd Ave., Se. 2600
Miami, FL 33131

Mr. Rabin:

Per your request, I am providing the following summary of the psychological evaluation and risk assessment conducted with Alejandro Alvarez on July 14 and August 10, 2022 at Federal Detention Center (FDC) in Miami, Florida.  The evaluation consisted of a review of records (see Appendix A) as well as a five-and-a-half-hour interview and two and a quarter hours of psychological testing including the Minnesota Multiphasic Personality Inventory – 3 (MMPI-3), the Psychopathy Checklist – Revised (PCL-R), the Trauma Symptom Inventory – 2 (TSI-2), and the Abel Assessment of Sexual Interest – 3 (AASI-3) conducted with Mr. Alvarez.

At the time of evaluation, Mr. Alvarez was a thirty-four-year-old Hispanic male who was born in Miami Beach, Florida.  He described his parents separated when he was eight years old and he subsequently resided with his mother, who has not remarried, until his arrest in the current case.  He indicated she currently resides in Hialeah, Florida and that he last visited with her in June 2022, adding he has communicated with her by telephone on a daily basis since being detained.  He reported his father currently resides in Texas and described a nonexistent relationship with him, adding he last visited with him in 2018 and last communicated with him in the summer of 2021.  He reported having two younger sisters, Christina who resides in New York but has temporarily relocated to South Florida to support him and their mother and Jessica who resides in Washington, DC.  He reported last visiting with his sisters in June 2022 but described he communicates with them on a daily basis.  Mr. Alvarez also reported having an older paternal half-brother with whom he occasionally communicates and a younger paternal half sister with whom he has no contact. He acknowledged a family history of alcoholism; however, denied a history of substance abuse, criminal involvement, or mental illness.

Mr. Alvarez presented with a sexual developmental history remarkable for sexual victimization between the ages of twelve and seventeen by his mother's boyfriend. He indicated that, approximately two to three times a month, the perpetrator showed him pornographic depictions of minors and adults, engaged him in mutual masturbation, had Mr. Alvarez masturbate him, and that he routinely measured the length of Mr. Alvarez' penis. Mr. Alvarez also reported a history of indiscriminate section of partners and one-night stands as an adult. He denied use of sex as a coping mechanism for negative mood states.

Mr. Alvarez indicated he graduated from American Senior High School in Miami, Florida. He denied a history of learning disabilities or attending special education classes. He related generally positive relationships with other students and teachers and denied fighting in school. He denied being a member of a school sponsored sports team; however, described he was a member of the Premed Honor Society in his junior year of high school and the Science Club and Sorrota, a community service organization, all four years of high school and that he served as an officer in the latter organization during his junior and senior years. He denied ever failing or repeating a grade or significant disciplinary problems or actions in school. Mr. Alvarez described he subsequently attended Florida State University (FSU) where he majored in history and political science; however, dropped out approximately two semesters short of graduation.

Mr. Alvarez denied a history of military service. He reported beginning to work at the age of eighteen at which time he was employed as a host with a restaurant. He maintained this position for seven months before leaving to attend college. He indicated he secured a position with FSU in Union Productions as the Co-sponsorship Coordinator for four years, describing he was eventually promoted to manager of this division. At the age of twenty-four, he left FSU and returned to the Miami area. He was unemployed for approximately one year before he secured employment with the retail clothing store, Forever 21, as a sales associate. Mr. Alvarez indicated he left Forever 21 in 2017 as a comanager for a better career opportunity in property management. He described starting as leasing officer before being promoted to leasing manager and then assistant manager, the position where he was employed at the time of his arrest in the instant offense. He denied ever being fired from a job.

Mr. Alvarez denied ever having been married. He reported cohabitating with a romantic partner while attending college, describing they initially met as roommates when they lived in a town home with two other individuals. He indicated they developed a romantic relationship and resided together for approximately one and a half years. He indicated the other occupants of the residence graduated and moved away at which time Mr. Alvarez and his partner moved to separate residences. He indicated they maintained their relationship for another year until his partner relocated and the relationship dissolved. He denied having other significant romantic relationships. He denied having children. Mr. Alvarez reported numerous friendships in the community. He identified his mother, sisters, a cousin, and five friends in the community he has known between five and twenty-two years as the most important individuals in his life, describing they are aware of his charges and remain supportive of him. Mr. Alvarez reported he enjoyed dining out, attending concerts and clubs, community events, theme parks, and movies in

his leisure time.  He denied being a member of community organizations or sports teams or having a religious affiliation.  He reported the use of alcohol beginning at the age of sixteen, consuming up to ten drinks, two to three times per week.  He reported marijuana use between the ages of eighteen and twenty-four, consuming on a daily basis at times.  He reported the use of powdered cocaine beginning at the age of eighteen, consuming up to one to two grams per weekend.  Mr. Alvarez reported experimental use of ecstasy and psychedelic mushrooms on seven or eight occasions, lysergic acid diethylamide (LSD) on two occasions in college and "poppers" (alkyl nitrites) one to two times per month over the last two years.  He denied the use of other substances.  He reported symptoms consistent with the abuse of alcohol and cocaine.

Mr. Alvarez denied knowledge of problems with his mother's pregnancy or delivery of him or his attainment of developmental milestones.  He reported a history of pancreatitis and low triglycerides which is managed with medication.  He reported having been diagnosed with Antiphospholipid Syndrome (APLS), a blood clotting disorder, in 2018 that is controlled with medication.  He also reported having been diagnosed with HIV in 2020.  Mr. Alvarez denied an additional history of significant injury, chronic medical problems, hospitalizations, trauma to the head with loss of consciousness, or seizures.  He reported participating in approximately sixteen individual, outpatient sessions at the FSU counselling center to address symptoms of depression and anxiety following the termination of his relationship as described above.  In 2019, he began weekly outpatient, individual counseling with Michael McCarthy, LCSW following a car accident which exacerbated his anxiety and panic attacks.  He indicated sessions focused on relaxation techniques such as progressive muscle relaxation, breathing exercises, and visualizations which he found to be beneficial.  Mr. Alvarez indicated that, during the pandemic, the format switched to virtual sessions.  He described he terminated treatment in November 2020 due to his perception the virtual sessions were not as beneficial as well as financial constraints.  Following his arrest and release on bond, he attended weekly individual outpatient treatment at Anaga Psychotherapy from March 2022 until he was detained on June 22, 2022.  He indicated the focus of treatment was substance abuse and anxiety management.  He added he also returned to treatment with Mr. McCarthy in February 2022 which focused on supportive interventions including anxiety management, cognitive restructuring, coping with anxiety regarding incarceration, and development of short- and long-term goals which he found to be beneficial.  Mr. Alvarez denied a history of residential treatment or involuntary commitment (Baker Act).  He denied a history of self-mutilatory, suicidal, or homicidal thoughts, gestures, or attempts.

Mr. Alvarez denied a history of significant conduct problems as a child.  He denied a history of thrill-seeking or risk-taking behavior or anger or impulse control problems.  He denied, and, and available records did not indicate, a prior history of arrests as a juvenile or adult.  As you are aware, Mr. Alvarez is currently pending disposition of charges including two counts of Distribution of Child Pornography and one count of Possession of Child Pornography subsequent to accessing child sexual exploitation material via the Telegram social media application.

Mr. Alvarez produced a consistent MMPI-3 profile.  He did not evidence under-reporting (fake good) of mental health problems in responding to the test instrument.  He

reported a significant number of physical health symptoms and concerns. This level and type of responding may suggest over reporting for some individuals; however, given Mr. Alvarez' description of significant medical problems as noted above, his responses are considered to be accurate and valid. His responses on the MMPI-3 indicate significant emotional distress, that he currently feels overwhelmed, and experiences life as a strain. He reports feeling sad and unhappy, lacking in energy, fatigue, sleep disturbance, helpless and hopeless, and sexual dysfunction. Mr. Alvarez also acknowledged multiple anxiety-related experiences including generalized anxiety, reexperiencing of negative events, and panic. His responses indicate he experiences features of Posttraumatic Stress Disorder including intrusive ideation, nightmares, and dissociative experiences. He also reports excessive worry and ruminative thoughts in a number of areas. He will be prone to developing physical symptoms in response to stress including head pain, vague neurological complaints, and feeling weak and tired. Mr. Alvarez' responses indicate he experiences self-doubt and futility, feels indecisive and inefficacious as well as insecure and inferior, and is prone to engage in self-disparaging and intropunitive thinking. Mr. Alvarez endorsed items indicating a history of substance abuse and substance related problems including impulsivity and poor decision making. It is likely he uses substances as a form of self-medicating his intrusive thoughts, depression, and anxiety. While he did not endorse items which directly inquire about suicidal thoughts and actions, he will be at risk for suicidal ideation and suicidal thoughts and plans should routinely be assessed. Interpersonally, Mr. Alvarez reported he enjoys social situations and events. He is likely perceived by others as outgoing and gregarious.

The PCL-R is an assessment of psychopathy, a personality construct commonly identified in those individuals who repeatedly violate the law, are grandiose, and demonstrate a superficial and callous interpersonal style lacking in empathy and remorse. Mr. Alvarez' score on the PCL-R is 4 (out of a possible 0 to 40) which places him in the 1st percentile when compared to a sample of male inmates. The author of the instrument suggests a cutoff score of 30 to identify those individuals who have a clinically significant degree of psychopathy. The results of the PCL-R suggest Mr. Alvarez does not possess clinically significant characteristics of psychopathy.

Mr. Alvarez produced a valid TSI-2 profile suggesting he approached the test instrument in an open and candid manner and did not under- (fake good) or over- (fake bad) report trauma related symptoms. His responses indicate he experiences memories which he perceives to be beyond his control that may include nightmares, flashbacks (i.e., sudden, intrusive sensory memories of a prior traumatic event), upsetting memories that are easily triggered by current events, and repetitive thoughts of an unpleasant previous experience that intrude into awareness. These experiences will result in fearful preoccupations, anxiety, and possibly panic attacks typified by worry, irrational fears, nervousness, and fears of death or injury. He will attempt to cope with these intrusive thoughts and memories and the resultant anxiety by consciously attempting to suppress them from awareness and/or may avoid events or situations in his environment that might restimulate these painful thoughts or memories. He may also engage in less conscious responses to avoid these thoughts and memories by cognitively disengaging ("spacing out") when overwhelmed, describing he

feels out-of-touch with his emotions and sense of self.   Interpersonally, Mr. Alvarez will present with fears of abandonment and rejection in relationships and report concerns about being rejected or abandoned by others, needing attention in interpersonal contexts, and worries about not being liked or cared for by others.  Furthermore, he will present with a lack of self-knowledge, confusion over his own thoughts and beliefs, difficulties forming goals, and an inadequate access to an internal, separate self as well as self-devaluation and reduced self-confidence indicative of identity problems.  He will be dependent on others to provide him information about his thoughts and identity leading to poor interpersonal boundaries and susceptibility to influence by others.  This relative lack of a stable, ongoing model of self or identity, in combination with anxiety regarding relationships with others, leads to depressive emotional states including feelings of worthlessness and inadequacy as well as a view of the future as hopeless and behavioral responses such secluding or isolating themselves from others. This approach to relationships and dependence on others is often the result of early negative experiences with attachment figures such as childhood physical or sexual abuse as was experienced by Mr. Alvarez.

Objective assessment of Mr. Alvarez' sexual interest of twenty-two image categories with the AASI-3 utilizing measurements taken beyond his awareness indicated interest in the Caucasian and African-American adolescent (14 – 17-year-old) and adult male and female categories.  For comparison to his objective measures, Mr. Alvarez' self-reported ratings indicated sexual interest in the Caucasian and African-American adult male categories.  It is important to note that sexual interest in the adolescent categories on the instrument is considered to be biologically within normal limits; however, if acted upon, is considered to be a serious boundary violation and a violation of law.

While actuarial instruments have been developed to assess risk for sexual re-offense, these instruments have been largely developed on samples of incarcerated, adult males arrested for contact or attempted contact offenses.  A similar tool for individuals possessing child sexual exploitation material has been developed and is currently being empirically validated.  Therefore, the application of these instruments to Mr. Alvarez' case is not indicated.  It is noted that research has not found the number of files possessed by the individual or the content (e. g., penetration of a minor by an adult, bondage, bestiality, etc.) to be associated with increased risk for commission of a contact offense in the future.

Follow up studies of some of these samples has indicated 1.3% of subjects in samples of offenders that only engaged in child pornography offenses reoffended with a contact sexual offense, 5.3% of the subjects reoffended with a non-contact sexual offense, and 4.4% of the subjects reoffended by commission of a child pornography offense during follow up periods of 4.1 and 5.9 years.  Furthermore, only 24% of child pornography offenders violated probation or parole for any type of offense (sexual or non-sexual) with only 12% of this sample violating for being in the presence of children or accessing a computer, significantly less than contact offenders.  A more recent study using the same population but a smaller sample set indicated 3% of subjects in the sample of offenders that only engaged in child pornography offenses reoffended with a contact sexual offense and 7% of the subjects reoffended by commission of a child pornography offense during

an average follow up period of 8.3 years. Furthermore, only 28% of child pornography offenders violated probation or parole for any type of offense (sexual or non-sexual).

A recent meta-analytic study found that, in a sample of 1,247 on-line offenders (predominantly child pornography possessors with some individuals who attempted to lure children to engage in sexual behavior via the internet), 2% reoffended with a new contact offense and 3.4% re-offended with a new child pornography possession offense, corroborating prior findings using a significantly larger comparison sample. Furthermore, in a report to congress released in February 2013, the United States Sentencing Commission, after studying the issue of child pornography sentencing guidelines over approximately two years and conducting its own research study, reiterated the low risk nature of non-production possessors of pornography depicting minors finding 3.6% of the sample committed a new contact sexual offense, 1.5% of the sample committed a non-contact offense, and 2.3% of the sample reoffended with a new child pornography offense over an 8.5 year follow-up period. Lastly, a 2016 study with 4,612 offenders followed for up to ten years indicated that those offenders who only possessed pornography depicting minors reoffended with a contact sexual offense at a rate of 0.5%. 1.6% of this sample committed a new possession of pornography depicting children offense at three years.

As Mr. Alvarez denied, and available information does not indicate, that he has been previously or concurrently arrested for a contact sexual offense or a non-sexual non-violent or violent offense, his history most closely resembles that of the child sexual exploitation material possession only offender. The associated risk to commit a future contact sexual offense is considered to be between 0.5% and 3.6%, a non-contact sexual offense between 1.5% and 5.3%, and a child sexual exploitation material offense between 2.3% to 7.0% between approximately six to ten years.

Dynamic risk assessment instruments are likewise not applicable in Mr. Alvarez' case as it is not representative of the normative samples; however, the underlying components, while not using the scoring algorithms, can be utilized to guide clinical judgment. Based on available information, Mr. Alvarez presents with deficits in the social/intimacy domain including problems with capacity for relationship stability as he as not had a cohabitating, romantic relationship for a significant period of time and is not currently in a relationship. He does not present with deficits in this domain related to problematic social influences, emotional identification with children, hostility toward women, social rejection/loneliness, or lack of concern for others suggesting an overall reduction in risk. He presents with problems in the general self-regulation domain including poor cognitive problems solving skills in that he is able to identify life problems and alternative solutions; however, appears to have difficulty evaluating those solutions and formulating a plan for addressing the problem. He does not present with deficits in other areas of this domain including impulsive acts, negative emotionality or hostility, or problems related to cooperation with supervision which suggest a reduced risk. Based on available information, Mr. Alvarez presents with problems related to sexual self-management including sex drive/preoccupation in that he has a history of indiscriminate selection of partners. He does not present with problems with other factors in this domain including use of sex as a coping mechanism for negative mood states or

deviant sexual interests based on current objective assessment. Overall, assessment of dynamic risk factors does not suggest an adjustment to his assessed risk.

In summary, Mr. Alvarez is pending disposition of charges including one count of Distribution of Child Pornography and two counts of Possession of Child Pornography related to accessing child sexual exploitation material via a social media platform. It is noted he reported engaging in sexual activity with two teenage males he met via social media applications, initially believing them to be eighteen years of age or older based on their profiles. He indicated that, upon meeting them, he had suspicion one of these individuals may have been younger; however, ages were not discussed and it was not until many years later his suspicions were confirmed when he again encountered them on social media. Although a Paraphilic (sexual deviance) Disorder, specifically pedophilic disorder, was considered based on the underlying reported facts in the current case, this class of diagnosis cannot be unequivocally concluded at this time. While available information indicates Mr. Alvarez accessed child sexual exploitation material and reported to investigating agents he masturbated while viewing this material, he clarified in the current interivew this behavior involved less than one percent of material depicting prepubescent aged individuals and objective assessment did not indicate sexual interest in the prepubescent age categories which contradicts this class of diagnosis. He meets criteria for Major Depressive Disorder, recurrent episodes, moderate; Generalized Anxiety Disorder with panic attacks; Alcohol Use Disorder, in early remission, in a controlled environment, mild; and Stimulant (Cocaine) Use Disorder, in early remission, in a controlled environment, mild. A provisional diagnosis of Posttraumatic Stress Disorder is provided as objective assessment strongly indicated symptoms of this disorder; however, in the current interview, Mr. Alvarez did not endorse a sufficient number of symptoms to qualify for this diagnosis. It is important to recognize the diagnosis does not determine the course of the disorder or risk for future behavior; therefore, assessment of risk factors and comparison to known samples of recidivists with similar characteristics is critical and, in Mr. Alvarez' case, indicates he is a low risk to commit future sexual offenses, either a contact or possession of child sexual exploitation material offense. Additionally, assessment of several dynamic risk factors known to exacerbate or mitigate risk for sexual offenders does not suggest an overall exacerbation of this assessed risk. Lastly, it should be noted there is not empirical support to indicate that the duration of viewing/collecting pornographic depictions of minors, the number of images possessed by an individual, or the type of image (e. g., penetration of a child under the age of twelve, sadism/masochism, bestiality, anime, etc.) is associated with increased risk for the commission of future offenses, either future possession of child sexual exploitation material or contact offenses.

Targeted mental health intervention to address Mr. Alvarez' offense behavior is recommended. Interventions provided will need to be sensitive to, and account for, Mr. Alverez' history of childhood trauma including exposure to pornography and sexual victimization. These experiences are related to his poor sense of identity, reliance on others, and poor sexual boundaries which made him vulnerable to manipulation by others and ultimately contributed to the offense behavior. Assisting Mr. Alvarez to address and better understand these previously untreated childhood traumas will result

in the enhancement of his self-esteem and self-reliance and lead to improved decision making and problem-solving skills. Interventions should also focus on the impact of these prior traumas on his relationships and assist him in the development of healthy romantic relations to reduce his reliance on the internet for socialization and sexual expression. Additionally, as substance use disorders are also likely to have contributed to the offense behavior, substance abuse treatment is recommended. Interventions are most effective and garner the most significant long-term benefits when provided in close proximity to the offense behavior, noting that the simple passage of time in a secured environment has not been empirically demonstrated to reduce risk. Should the court consider a term of probation, studies have indicated individuals who participate in community supervision in conjunction with mental health treatment focused on sex offense issues reoffended 66% less than those individuals who did not participate in these services. Additionally, those offenders who complete an intensive treatment program are up to 37% percent less likely to commit a sexual offense in the future. Therefore, his participation in individualized treatment as described above would serve to further mitigate his low risk. Further, research has demonstrated that, in lieu of any significant involvement with the criminal justice system, his risk will be reduced by half in approximately five years suggesting this as an appropriate time frame for the termination of supervision from a risk management perspective should the court consider this option.

Given Mr. Alvarez' low risk for future sexual offenses as assessed by empirically guided risk assessment and assessment of a number of dynamic variables which does not indicate an increase in his risk as well as demonstrated amenability to treatment, he presents a low risk for future offending and is a good candidate for treatment and community supervision. With the interventions described above, Mr. Alvarez will present a negligible risk to the community.

The above assessment is based on available information and is subject to revision should additional records become available in the future. If I may be of further assistance, please contact me at (321) 338-7555.

Sincerely,

Eric A. Imhof, Psy.D.
Licensed Psychologist (Florida - PY 6061)
Licensed Clinical Psychologist (Virginia - # 0810002517)
Licensed Clinical Psychologist (Alabama - # 1635)

APPENDIX A

SOURCES OF INFORMATION

This evaluation is based on information obtained from the following:

<u>Records provided by Rabin & Lopez, P.A.:</u>

1) Untitled document [background/records request] (12/29/21; 2 pp.)
2) Record Detail – DAVID Driver and Vehicle Information Database (12/29/21; 1 p.)
3) Untitled document [FCIC Hit Response] (12/29/21; 1 p.)
4) Untitled document [NCIC Response] (12/29/21; 1 p.)
5) Untitled document [Florida CCH Response] (12/29/21; 10 pp.)
6) Subpoena to AT&T (12/29/21; 4 pp.)
7) Federal Bureau of Investigation - Import Form (12/29/21; 1 p.)
8) Untitled Federal Bureau of Investigation document [report] (1/3/22; 1 p.)
9) Federal Bureau of Investigation – Electronic Communication (1/4/22; 2 pp.)
10) Federal Bureau of Investigation – Tactical Intelligence Report (1/4/22; 3 pp.)
11) Criminal Cover Sheet (no date; 1 p.)
12) Motion to Seal (no date; 1 p.)
13) photocopies of photographs of apartment building (no date; 6 pp.)
14) Untitled Federal Bureau of Investigation document [report] (1/5/22; 1 p.)
15) photocopy of photograph of apartment building (no date [circa 1/5/22]; 1 p.)
16) Untitled Federal Bureau of Investigation document [report] (1/5/22; 1 p.)
17) Record Detail – DAVID Driver and Vehicle Information Database (1/5/22; 1 p.)
18) Federal Bureau of Investigation - Import Form (1/5/22; 1 p.)
19) Federal Bureau of Investigation - Import Form (1/5/22; 1 p.)
20) Sealed Order (1/7/22; 1 p.)
21) Criminal Complaint by Telephone or Other Reliable Electronic Means (1/7/22; 7 pp.)
22) Arrest Warrant (1/7/22; 2 pp.)
23) Bond Recommendation (no date [circa 1/7/22]; 1 p.)
24) Advice of Rights (1/10/21 [likely typo]; 1 p.)
25) Consent to Search Electronic Device(s) (1/10/21[likely typo]; 1 p.)
26) untitled document [Physical 1A/1C Cover Sheet for Serial Export (no date; 1 p.)
27) Federal Bureau of Investigation – Collected Item Log (1/10/22; 2 pp.)
28) Federal Bureau of Investigation - Import Form (1/10/22; 1 p.)
29) File titled USA_000076 [audio recording of interview with Alejandro Alvarez] (1/10/22; 59 min., 52 sec.)
30) Alejandro Alvarez Interview Transcript (no date; 20 pp.)
31) Federal Bureau of Investigation – Collected Item Log (1/10/22; 1 p.)
32) Untitled Federal Bureau of Investigation [report] (1/10/22; 2 pp.)
33) Untitled Federal Bureau of Investigation [report] (1/11/22; 1 p.)
34) Extraction Report – Apple iOS Full File System (5/24/21 – 1/9/22; 169 pp.)